IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ERIC FARREY<br>1040 Biruta Street<br>Akron, Ohio 44307 | CASE NO. |
| Plaintiff | |
| | JUDGE |
| v. | |
| CITY OF AKRON<br>c/o City of Akron Law Department<br>161 South High Street, Suite 202<br>Akron, Ohio 44308 | **COMPLAINT FOR DAMAGES<br>UNDER 42 USC 1983** |
| and | |
| WILLIAM MEYER<br>c/o City of Akron Police Department<br>217 South High Street<br>Akron, Ohio 44308 | |
| in his individual and official capacity | |
| and | |
| RUSSELL BASSETT<br>c/o City of Akron Police Department<br>217 South High Street<br>Akron, Ohio 44308 | **JURY DEMAND** |
| in his individual and official capacity | |
| and | |
| DANIEL CAPREZ<br>c/o City of Akron Police Department<br>217 South High Street<br>Akron, Ohio 44308 | |
| in his individual and official capacity | |
| and | |

| | |
|---|---|
| WILLARD CONGROVE | ) |
| c/o City of Akron Police Department | ) |
| 217 South High Street | ) |
| Akron, Ohio 44308 | ) |
| | ) |
| in his individual and official capacity | ) |
| | ) |
| Defendants | ) |

Plaintiff, Eric Farrey, by and through undersigned counsel, hereby alleges the following:

## I. PARTIES

1. Plaintiff is an African-American male citizen of the United States and resides in Akron, Ohio.

2. Defendant City of Akron is an Ohio municipal corporation that operates the Akron Police Department. The City is responsible for the policies and practices of the City and Police Department.

3. Defendant William Meyer was a Patrolman for the Akron Police Department at all relevant times in this Complaint.

4. Defendant Russell Bassett was a Patrolman for the Akron Police Department at all relevant times in this Complaint.

5. Defendant Daniel Caprez was a Sergeant for the Akron Police Department at all relevant times in this Complaint.

6. Defendant Willard Congrove was a Sergeant for the Akron Police Department at all relevant times in this Complaint.

7. Defendants Meyer, Bassett, Caprez, and Congrove, at all relevant times in this Complaint, acted under the color of law and are sued in their individual and official capacities.

## II.  JURISDICTION AND VENUE

8. This Court has original jurisdiction over claims brought under 42 USC 1983 pursuant to 28 USC 1331, 1343(a)(3)-(4).

9. Venue is appropriate under 28 USC 1391(b).

## III. FACTS

10. In the early morning hours of February 14, 2014, Plaintiff Farrey visited the residence of his girlfriend Jenna Warren at 1861 Cromwell Drive, Apt. 7, Akron, Ohio 44313. Her cousin Richard Eaton was also there.

11. Farrey and Eaton got into a verbal argument that eventually escalated to where Eaton placed a chokehold on Farrey from behind. They fell to the ground together and Eaton pinned down Farrey. Eaton was on Farrey's back as Farrey laid face down. Farrey did not hit his head on the ground and did not suffer any injury from the fall or chokehold. Meanwhile, Warren had called police.

12. Two white male Akron Police officers arrived, came inside the residence, and placed Farrey under arrest. As Eaton let go of Farrey, one of the officers handcuffed Farrey's wrists together behind his back. Two officers lifted him up and escorted him out of the residence.

13. At all relevant times, Farrey fully cooperated with the officers' arrest and never resisted. He never obstructed the officers from conducting their business.

14. The two officers escorted Farrey with one officer grabbing one of Farrey's arms and the other officer grabbing the other arm. The officers were behind Farrey. The officers walked at a brisk pace, forcing Farrey to walk at the same pace.

15. As they approached the police motor vehicle, the officers continued to walk at the same brisk pace and did not slow down. The officers pushed Farrey onto the vehicle, directly causing Farrey's right side of his face to hit the beam between the rear view window and rear passenger door. Farrey sustained head trauma and open cut above his eyebrow that caused his blood to spill and smear on the police vehicle.

16. Immediately thereafter, the officers lifted Farrey up by grabbing his arms behind his back and pulling upward. They lifted Farrey to the point where he could barely touch the ground with the tips of his toes. At that point, the officers released their grip, directly causing Farrey to free fall to the ground with his face hitting the pavement. Farrey sustained head trauma and additional facial cuts causing him to bleed. He also experienced bleeding out of his ears.

17. Shortly after Farrey sustained his injuries, Warren came outside to see what was going on. She saw blood on the police vehicle. As soon as the officers saw her, one of them yelled at her to go back inside. Warren complied.

18. Farrey was then placed in the police vehicle and transported to Summit County Jail. However, the jail refused to accept him because of his noticeable injuries.

19. Farrey was then placed in a police paddy wagon and taken to Akron General Medical Center. Farrey was dropped off at the AGMC emergency room. Farrey asked the driver to identify the officers who slammed him into the police vehicle and then dropped him to the ground. The driver told Farrey that the officers with Badge Nos. 329 and 425 were the culprits. Upon due diligence, Farrey and his counsel later learned that Defendant Bassett was Badge No. 329 and Defendant Meyer was Badge No. 425.

20. Farrey was released from handcuffs and allowed to go into AGMC on his own without police escort. Farrey immediately told the hospital staff that he was assaulted by police officers. The staff then quickly placed him in a room to receive care.

21. Other police officers arrived and harassed Farrey. Two officers were present in his room and at least three were outside the door in the hallway.

22. Defendant Caprez arrived to Farrey's room and asked Farrey how he obtained his injuries. Farrey told Caprez that two police officers caused the injuries. Farrey demanded that a report be made about the officers' assault and that photos of his injuries be taken. Caprez became upset and told Farrey he was under arrest and going to jail. No photos were ever taken of Farrey's injuries by anyone in the Akron Police Department.

23. Farrey felt very intimidated to the point where he downplayed his injuries to hospital staff so he could be discharged as soon as possible. His plan was to then seek care at Akron City Hospital without any officers knowing his whereabouts.

24. Around sunrise, Farrey was discharged from AGMC and allowed to leave on his recognizance. His family picked him up and took him to Warren's residence at 1861 Cromwell so he could pick up his motor vehicle. Farrey drove up the street before exiting to check on the trunk. As Farrey was checking on the trunk, Caprez approached in his vehicle from the other direction. Caprez rolled down his window and asked Farrey if he could interview him. Farrey obliged.

25. Caprez turned on a voice recorder to record the interview. Caprez asked Farrey who hurt him. Farrey responded that the police did. Caprez became extremely upset, turned off the recorder, ended the interview, entered his vehicle, and drove away.

26. Caprez then went to Warren's residence to talk to Warren and Eaton. Caprez tried to coerce them into saying that Farrey assaulted them, but they refused to comply. Caprez then went to Farrey's mother's house at 1040 Biruta Street, Akron, Ohio 44307, looking for Farrey. Caprez asked Farrey's mother where he was at. Farrey's mother told Caprez she did not know.

27. Meanwhile, Farrey went to Akron City Hospital, received treatment there, and was later discharged.

28. On February 20, 2014, Farrey was driving and pulled over by Akron police officers. He was arrested for assault pertaining to the incident with Eaton and Warren the week before. Police said they found a knife in Farrey's vehicle, which Farrey adamantly denied. The police accused him of carrying a concealed weapon. Farrey became very upset at the officers. The CCW charge was later scribbled over on the charging ticket, so Farrey was not charged with that offense.

29. Because Farrey argued with the officers, he was charged with obstruction of official business. Police also found empty beer cans in the back of the vehicle, leading to an open container charge.

30. For the February 14, 2014 events, Farrey was charged in Akron Municipal Court Case No. CR14-01354 with two counts of assault, each first degree misdemeanor, one count of disorderly conduct, a fourth degree misdemeanor, and one count of public intoxication, a minor misdemeanor. For the February 20, 2014 events, Farrey was charged in Akron Municipal Court Case No. CR14-01549 with one count of obstruction of official business, a second degree misdemeanor, and one count of open container, a fourth degree misdemeanor.

31. As part of a plea deal, Farrey pled guilty to the fourth degree misdemeanor disorderly conduct charge and obstruction of official business charge in exchange for a dismissal of all

other charges. Farrey was sentenced to 90 days in Oriana House and six months probation, which Farrey fully complied without incident.

32. Instead of naming Meyer and Bassett as the arresting officers for the February 14, 2014 incident, the police report approved by Defendant Congrove names Officers Kyle Cunningham and Tanisha Stewart as the arresting officers.

33. Farrey suffered injuries to his head and face. He bled out of his ear and suffered blurred vision and severe headaches. To this day, he continues to suffer intermittent headaches, ringing in his ears, blurred vision, and watery eyes based on any given set of various conditions on a daily basis. These symptoms show no signs of subsiding. He did not ever suffer these symptoms before aforementioned altercation with Akron police officers. These symptoms are severe enough to cause material disruption in his daily living, ability to work, and enjoyment of life.

### IV. COUNT ONE – 42 USC 1983

34. Plaintiff incorporates Paragraphs 1-33 as if fully rewritten herein.

35. Defendants Meyer, Bassett, Caprez, and Congrove, in their individual and official capacities, acted under the color of law to deprive Plaintiff Farrey of his Fourth and Fourteenth Amendment rights to be free from excessive force. These rights were clearly established at the time and a reasonable person would have known of their existence. Defendants Meyer, Bassett, Caprez, and Congrove violated Plaintiff's rights maliciously, willfully, and with reckless indifference to his welfare.

36. Defendant City of Akron had notice or constructive notice of persistent patterns, policies, practices, and customs of its police department and its officers to deprive citizens of their right to

be free from the use of excessive force. This Complaint only adds to the long list of complaints filed in this Court by people alleging excessive force by Akron police officers.

37. Defendant Sgt. Caprez, despite hearing Farrey's complaint of the assault referenced in Paragraphs 15 and 16 and seeing Farrey's visible injuries, did nothing to meaningfully address or investigated Farrey's allegations. Instead, he did everything he could to cover up the allegations by blaming and intimidating Farrey.

38. Through his conduct in handling Farrey's complaint, Caprez acted as a policymaker for the City of Akron by conducting and approving, with finality, an investigation that was grossly inadequate and designed to not achieve any accountability for the police assault on Farrey.

39. Defendant Sgt. Congrove participated in covering up Farrey's allegations and prohibiting any meaningful investigation into the allegations by approving a final report that falsely named two officers as Farrey's arresting officers, instead of naming Defendants Meyer and Bassett, who were the actual arresting officers who assaulted Farrey.

40. Through his conduct in handling Farrey's complaint, Congrove acted as a policymaker for the City of Akron by approving a final report that was false in its naming of the arresting officers. This false report was designed to impede and/or prohibit any meaningful investigation and accountability for the police assault on Farrey.

41. As a direct and proximate result of all Defendants' conduct, Farrey suffered injuries to his head and face. He still suffers from these injuries to this day and will continue to suffer from them for the rest of his life, causing disruption to his daily living, ability to work, and enjoyment of life.

## V.  JURY DEMAND

42. Plaintiff demands a trial by jury.

## VI. PRAYER FOR RELIEF

43. WHEREFORE, Plaintiff demands judgment against any or all Defendants, jointly and severally, for the following:

   a. Compensatory, actual, pain and suffering damages in an amount to be determined at trial;

   b. Punitive damages in an amount to be determined at trial;

   c. Reasonable attorney fees and expenses;

   d. Additional relief in law and/or equity that the Court deems just and proper.

Respectfully submitted,

/s/ *Stephen P. Hanudel*_____
Stephen P. Hanudel (#0083486)
Attorney for Plaintiff
124 Middle Avenue, Suite 900
Elyria, Ohio 44035
Phone: (440) 328-8973
Fax: (440) 261-4040
sph812@gmail.com

/s/ *Kenneth N. Ortner*_____
Kenneth N. Ortner (#0069726)
Attorney for Plaintiff
5320 Hoag Drive, Suite B
Elyria, Ohio 44035
Phone: (440) 346-2093
Fax: (440) 695-1008
kennethortner@yahoo.com